**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     RUSSELL A. CARREIRO | ) | Case No. 11-18518-BFK |
|     GRETCHEN G. CARREIRO | ) | Chapter 13 |
|         Debtors | ) | |
| | ) | |
| WASHINGTON GAS LIGHT FCU | ) | |
|         Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 12-01018-BFK |
| | ) | |
| RUSSELL A. CARREIRO | ) | |
| GRETCHEN G. CARREIRO | ) | NOT FOR PUBLICATION IN WEST'S |
|         Defendants | ) | BANKRUPTCY REPORTER |

**MEMORANDUM OPINION**

This matter came before the Court on August 20, 2012, for a trial on the merits. The Plaintiff, Washington Gas Light Federal Credit Union ("Washington Gas") claims that the Defendants' debt should be excepted from their discharge under section 523(a)(2)(A) of the Bankruptcy Code (false pretenses, false representations or actual fraud, other than a statement respecting the debtor's or an insider's financial condition). For the reasons stated below, the Court determines the Defendant's debt to be dischargeable.

**Findings of Fact**

Having heard the testimony of the parties and having reviewed the evidence, the Court makes the following findings of fact:

    1.    The Debtors are husband and wife. Ms. Carreiro works for the Federal Emergency Management Agency (FEMA). She has been employed there for about a year.

Previously, she worked for the Department of Transportation. Mr. Carreiro works for the Fairfax County Public Schools as a network operations manager.

2. In April 2010, the Carreiros applied for a loan with Washington Gas. They previously held loans with Washington Gas and maintained their bank account there.

3. Ms. Kwak is a loan manager with Washington Gas. She was the main representative who spoke with Ms. Carreiro about the loan, on the telephone. She also briefly spoke with Mr. Carreiro. She then faxed them a Loan Application, which they signed and sent back to her. Pl.'s Ex. 6.

4. The purpose of the loan was to pay off certain unsecured debts that the Carreiros had with other financial institutions, i.e., a debt consolidation loan.

5. The loan was approved, in the amount of $17,000. On April 13, 2010, the Carreiros signed the loan documents and returned them to Washington Gas.

6. Part of the loan documents included a one-page document on Washington Gas's letterhead, which was styled "Agreement," and provided in pertinent part as follows:

> Please be advised that by signing this agreement, you understand and accept that [Washington Gas] was able to offer the above referenced loan under the terms of paying off and closing these accounts and not opening any unsecured debt for 2 years from the date of this letter:
>
> | Creditor: | Account Number: |
> |---|---|
> | JC Penneys | 476 01 |
> | Chase Card Services | 2366 |
> | Sears | 7506 |
> | Credit Care/GEMB | 2073 |
> | Capital One | 1736 |
> | Target | 0090 |
> | HSN Credit | 0111 |

Pl.'s Ex. 1.

7. Washington Gas then proceeded to pay off the foregoing accounts by using the proceeds of the loan and payment statements that the Carreiros provided to Washington Gas. Pl.'s Ex. 2.

8. Despite the parties' understanding that the foregoing accounts would be closed, they were not in fact closed. There was some controversy in the testimony about who was responsible for closing the accounts. Ms. Carreiro testified that she thought Washington Gas would close the accounts. Ms. Kwak testified that the Carreiros were responsible for closing the accounts. The Court finds that it is more credible to conclude that the Carreiros were responsible for closing the accounts, since they own these accounts and Washington Gas would have no ability to close the accounts on its own.

9. After the Washington Gas loan closed, and the proceeds were disbursed to the Carreiros' creditors, the Carreiros began using the accounts again. It is not clear from the testimony precisely when they resumed using the accounts. The Defendants' Exhibit A shows that the Carreiros were using their account at Washington Gas to make monthly payments on other accounts, at least from May 2011 and forward. Whether the Carreiros were using these accounts, and making monthly payments on them, between April 2010 and May 2011 is unclear.

10. In January 2011, the Carreiros applied for another loan with Washington Gas. Washington Gas did not approve this loan. In the course of the application process, Washington Gas ran a credit report on the Carreiros. The credit report showed that the foregoing accounts were still open and active. Def.'s Ex. 7.

11. The Carreiros started falling behind on both their first and second mortgage.

12. Faced with the prospect of foreclosure, the Carreiros filed a voluntary petition under Chapter 13 of the Bankruptcy Code in this Court on November 29, 2011. On January 27,

2012, the Court entered an Order confirming their Chapter 13 Plan. Docket No. 28. The Carreiros' Chapter 13 Plan provides for monthly payments of $990 for 12 months, $1,105 for 24 months, $1,360 for 6 months, and $1,695 for 18 months. In all, the Plan proposes to pay approximately 22% to the Carreiros' non-priority, unsecured creditors. Docket No. 19.

13. Washington Gas filed a proof of claim in the Carreiros' bankruptcy case, in the amount of $11,566.21 as of the filing of the case. Proof of Claim No. 4.

14. Prior to filing for bankruptcy, the Carreiros had not defaulted on the Washington Gas loan. They had other loans, such as a car loan and a second mortgage loan, with Washington Gas, for which there were no defaults prior to filing for bankruptcy.

15. The Court takes judicial notice of the Carreiros' bankruptcy filings, which include an Amended Schedule F. Among the debts listed on Amended Schedule F are the following accounts and their "last active" dates:

| Account | Account No. | Type | Last Active |
|---|---|---|---|
| Capital One Bank | 1736 | Credit Card | 09/2011 |
| Chase | 2366 | Credit Card | 09/2011 |
| Citibank/Sears | 7882 | Credit Cards | 10/2011 |
| GE Capital Bank/ JC Penney | 7601 | Credit Card | 09/2011 |
| PayPal | 5218 | Credit Card | 07/01/2008 |
| Target | 0090 | Credit Card | 10/2011 |

**Conclusions of Law**

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Order of Reference from the United States District Court for the Eastern District of Virginia, dated August 15, 1984. This action, to determine the dischargeability of a debt, is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. § 1409(a). The Plaintiff bears the

4

burden of proof on all issues under Section 523 of the Code. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). The standard of proof is a preponderance of the evidence. *Id.*

A debtor who obtains confirmation of a Chapter 13 bankruptcy plan, and successfully makes payments under the plan, is entitled to a discharge of the debts provided in the plan, subject to certain exceptions. 11 U.S.C. § 1328(a). One of the exceptions to discharging a debt is if the debt is "for money, property, services, or an extension or renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

In order to prevail on its claim under section 523(a)(2)(A), Washington Gas must prove four elements: "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Foley & Lardner v. Biondo* (*In re Biondo*), 180 F.3d 126, 134 (4th Cir. 1999); *see also Field v. Mans*, 516 U.S. 59 (1995) (applying the justifiable reliance standard under section 523(a)(2)(A)). The Court will address each of these elements, in turn.

   *1. Did the Carreiros Make a False Representation or a Promise Without the Present Intent to Perform?*

A fraudulent statement under section 523(a)(2)(A) must be either a statement of existing fact or a promise made without a present intent to perform. In the latter case, a debt can be held to be non-dischargeable under 11 U.S.C. § 523(a)(2)(A) only if the Debtor made the agreement without the present intent to perform that agreement. *Structured Invs. Co. v. Dunlap (In re Dunlap),* 458 B.R. 301, 333 (Bankr. E.D. Va. 2011). As a matter of law, statements of future performance cannot constitute actual fraud, absent a present intent not to perform. *Soheily v. Vuong (In re Vuong),* 353 B.R. 860, 866 (Bankr. E.D. Va. 2006).

The Agreement made between Washington Gas and the Carreiros contained the following statement: "we will close these specific accounts, and we will not open any new unsecured credit accounts for a period of two years." This statement can only be viewed as a promise, and not a statement of existing fact. The question is whether the Carreiros made this promise without the present intent to perform. "A mere failure to keep a promise of future performance . . . does not constitute fraud unless at the time the promise was made the debtor had no intention of carrying through." *In re Vuong*, 353 B.R. at 866. If the Carreiros made this promise without the present intent to perform, then they necessarily had the intent to defraud Washington Gas at the time the promise was made. *See id.* If, on the other hand, they made this promise with the intent to abide by its terms, then it cannot be described as fraudulent because it was not a statement of existing fact. *See id.*

As noted above, it is not clear from the evidence precisely when the Carreiros began using the accounts that were to be closed under their agreement with Washington Gas. If the evidence showed that the Carreiros began using the accounts the day after they signed the agreement, then the Court might infer that they made the promise to Washington Gas without the present intent to perform. However, if they resumed using the accounts two or three months later, then the present intent not to perform is lacking. The Court finds that Washington Gas has not met its burden in proving that the Carreiros entered into the Agreement without the present intent to perform. Accordingly, the Court finds for the Carreiros on the false representation element under section 523(a)(2)(A).

Having found in favor of the Carreiros on the intent to defraud element, the Court could stop here, and not address any other elements under section 523. However, for purposes of completeness of the record, the Court addresses the causation and justifiable reliance element of

the Plaintiff's claim.  With respect to the second element, "inducement," the Court finds that the Carreiros' promise to close the accounts and not use them for two years induced Washington Gas to make the debt consolidation loan.

    *2.  Was Washington Gas's Loss Caused by the Misrepresentation?*

To prevail on its claim under 523(a)(2)(A), the Plaintiff must next prove that its loss was caused by the fraudulent misrepresentation.  *Fowler v. Garey (In re Garey),* 258 B.R. 356, 361 (Bankr. E.D. Va. 2000) (citing *Parker v. Grant (In re Grant),* 237 B.R. 97, 112 (Bankr. E.D. Va. 1999)).  Proximate cause is both (1) causation in fact, "loss suffered by one who justifiably relies upon the trust of the matter misrepresented, if his reliance is a substantial factor in determining the course of conduct that results in his loss;" and (2) legal causation, "if the loss might reasonably be expected to occur from the reliance."  *KMK Factoring, L.L.C. v. McKnew* (*In re McKnew*), 270 B.R. 593, 622 (Bankr. E.D. Va. 2001) (citing Restatement (Second) of Torts §§ 546, 584A (1976)).

Here, the Court cannot find that Washington Gas's loss was legally caused by the alleged misrepresentation.  The Carreiros both testified, convincingly, that they were compelled to file for bankruptcy not because of the unsecured debt that they took on, but because they got behind on their first and second mortgages and were facing a foreclosure.  In other words, even if the Carreiros had not incurred the unsecured debt, they still would have defaulted on their mortgages, and most likely would have had to file for bankruptcy.  This would have resulted in the discharge of the Washington Gas indebtedness.  There does not appear to be any causal connection between the Carreiros' incurring the unsecured debt obligations and the loss suffered by Washington Gas in this case.

The Court finds that Washington Gas's loss, the discharge of the remaining balance of its loan, was not caused by the Carreiros' having incurred the unsecured debt in violation of their promise to Washington Gas.

*3. Did Washington Gas Justifiably Rely on What the Carreiros Represented?*

Lastly, the Court addresses the final element of fraud, whether Washington Gas justifiably relied on what the Carreiros represented. The term "justifiable reliance" was adopted by the Supreme Court in the case of *Field v. Mans,* 516 U.S. 59 (1995). The Court explained the standard of justifiable reliance as follows:

> [A] person is justified in relying on a representation of fact "although he might have ascertained the falsity of the representation had he made an investigation." Significantly for our purposes, the illustration is given of a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if he could have "walked across the street to the office of the register of deeds in the courthouse" and easily have learned of an unsatisfied mortgage. The point is otherwise made in a later section noting that contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort. Here a contrast between a justifiable and reasonable reliance is clear: "Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."

*Id.* at 70-71 (quoting Restatement (Second) of Torts §§ 540, 545 (1976); W. Prosser, Law of Torts § 108, p. 718 (4th ed.1971)) (citations omitted).

The question is whether Washington Gas justifiably relied on the Plaintiffs' agreement that they would not incur any other unsecured indebtedness during the two-year period after the loan to the Carreiros. The Court finds that, although Washington Gas appears to have entered into the agreement in good faith, it could not have justifiably relied on this agreement. Washington Gas is a credit union, a sophisticated and highly experienced actor in the consumer

lending market in this region. As such, Washington Gas would have known that it could not possibly have policed, nor enforced, such an agreement not to incur any unsecured debt for a two-year period, on the part of its borrowers. Unsecured credit is simply too easily available to borrowers like the Carreiros, both of whom had stable employment histories, good incomes and (until more recently) no foreclosures or bankruptcies on their credit history. The Carreiros had already borrowed once from Washington Gas, in order to pay off other debts, which resulted in the second deed of trust loan against their property. Then, in April 2010, they went back to Washington Gas for a second debt consolidation loan. Of all credit unions, Washington Gas was in a unique position to know that the Carreiros, while they had a good credit profile, were prolific users of consumer credit.[1]

Finally, the Court finds that Washington Gas simply did not provide any evidence of justifiable reliance. Washington Gas's loan manager testified as to the circumstances of the loan to the Carreiros (the telephone calls, the fax of the loan documents, the return of the loan documents, etc.), but she did not testify as to the company's practices, nor as to any industry standards regarding promises by borrowers not to incur unsecured debt for a defined period of

---

[1] The Court rejects the Carreiros' argument that Washington Gas waived compliance with the Agreement, by: (a) the Carreiros' use of their Washington Gas credit union account to make monthly payments on the unsecured debt; and (b) the listing of the unsecured debt on a credit report received by Washington Gas in January 2011, in connection with another loan application by the Carreiros. First, Washington Gas is under no duty to have its personnel monitor its customers' accounts on a daily basis in order to enforce its agreements with its borrowers. It is not a privacy issue as suggested by counsel for Washington Gas (Washington Gas in fact has the right to monitor accounts maintained by its borrowers at Washington Gas); Washington Gas simply does not have a duty to expend resources to monitor its customers' accounts. Second, the fact that the unsecured debts were made known to Washington Gas in January 2011 is of no moment. By then, the Carreiros were already in breach of their agreement with Washington Gas. As it happens, their loan request was turned down for other reasons, but the fact that these unsecured credit obligations were listed in a credit report in January 2011 does not constitute a knowing and intentional waiver of the credit union's contractual rights.

time. The Court finds that Washington Gas failed in its burden of proof on why its reliance on the promise of the Carreiros not to incur any further unsecured debt for two years was justifiable.

## Conclusion

For the foregoing reasons, the Court finds that the Carreiros' debt to Washington Gas is dischargeable. A separate Order shall issue.


Date: _____          _____
                                       Brian F. Kenney
                                       United States Bankruptcy Judge


Copies to:

Washington Gas Light FCU
P.O. Box 1607
Springfield, VA 22151-0607
Plaintiff

Alfred Lawrence Toombs, Esquire
8957 Edmonston Rd
Ste A
Greenbelt, MD 20770-4044
Counsel for Plaintiff

Carmen A. Jacobs, Esquire
601 King St, Suite 400
Alexandria, VA 22314
Counsel for Plaintiff

Russell A. Carreiro
Gretchen Carreiro
5693 Assateague Place
Manassas, VA 20112-5433
Defendants

Robert Easterling, Esquire
2217 Princess Anne St., Ste. 100-2
Frederickburg, VA 22401
Counsel for Defendants